ROBERT E. STEWART and JO ANNE A. STEWART, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stewart v. Commissioner
Docket No. 11782-77.
United States Tax Court
T.C. Memo 1980-496; 1980 Tax Ct. Memo LEXIS 89; 41 T.C.M. (CCH) 318; T.C.M. (RIA) 80496; November 4, 1980, Filed Kim S. La Valley, for the petitioners. Jerome Borison, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner, in his statutory notice, determined a deficiency of $771 in petitioners' Federal income tax for their taxable year 1975. Due to concessions on their part, the only issue is whether the entire amount of a brokerage commission withheld from the proceeds of a loan obtained by petitioners in 1975 is "interest paid" thereon *90 in that taxable year within the meaning of section 163(a) of the Internal Revenue Code of 1954. [1]
FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioners filed their joint Federal income tax return for the taxable year 1975, using the cash receipts and disbursements method of accounting, with the Internal Revenue Service Center, Fresno, California. At the time they filed their petition in this proceeding, they resided in San Francisco, California. On August 12, 1975, petitioners obtained a loan in the principal amount of $16,000, evidenced by a promissory note, which was to be repaid over 60 months. To secure the loan, petitioners executed a second deed of trust on their residence. The lender paid the loan proceeds, and petitioners delivered the note, to Union Home Loans (hereinafter Union), as escrow holder. Petitioners, by a document they had signed August 7, 1975, entitled "Escrow Loan Instructions," instructed Union to, as soon as *91 the lender had paid the loan proceeds into escrow, record the deed of trust and deliver to the lender a policy of title insurance and the promissory note. The document further provided: At close of escrow, pay the following out of proceeds of loan * * *, to wit: * * * (3) broker's commission per any application or instruction or Mortgage Loan Broker's Statement signed by Borrower. Petitioner signed another document on August 7, entitled "Mortgage Loan Disclosure Statement," which provided in part as follows: I. SUMMARY OF LOAN TERMS
A. PRINCIPAL AMOUNT OF LOAN… $16,000.00 III. DEDUCTIONS FROM LOAN PROCEEDS
B. LOAN BROKERAGE COMMISSION… 2,400.00 On August 18, 1975, Union sent the Deed of Trust and loan principal to Transamerica Title Insurance Company (hereinafter Transamerica), instructing Transamerica to record the Deed of Trust when it could issue a title insurance policy. Union also directed Transamerica to prepare and send to Union checks in payment of various loan expenses, including a check made out to Union for $2,570.50. Transamerica did so and mailed petitioners a check for the net loan proceeds ($9,860.30) and a statement detailing the deductions *92 made from the gross loan proceeds ($16,000) in arriving at the net figure. Among the deductions listed was one for "New loan charges" of $2,570.50, paid to Union. On their 1975 return, petitioners deducted from their adjusted gross income the full amount of the loan fee as interest expense. Respondent determined that the fee should be deducted ratably over the life of the loan, and hence allowed only $171 of the fee, representing amortization of the fee for four months (in 1975) out of a total loan life of 60 months, as an interest deduction in 1975. OPINION At the outset, we note that respondent does not rely on his power to prescribe a method of accounting for a specific item at variance with the one regularly used by the taxpayer where the latter method fails to clearly reflect the taxpayer's income. Sec. 446(b). Rather, it is respondent's position that petitioners did not "pay" (within the meaning of section 163(a)) as interest the entire loan fee in 1975, because the interest charge resulting from the fee is deemed to be paid ratably over the life of the loan. Petitioner contends quite simply that the loan fee represented interest paid in 1975 and is hence fully deductible *93 in that taxable year. For the reasons stated below, we agree with respondent. Section 163(a) allows a deduction for "all interest paid * * * within the taxable year." There is apparently no question that the loan fee charged in this case constituted interest within the meaning of the statute. Deputy v. DuPont,308 U.S. 488 (1940). Our cases distinguish two factual situations. Where the gross loan proceeds are paid to the borrower in such a way that he obtains unrestricted control over them and the borrower then pays the loan fee to the lender from such proceeds, the entire fee is deductible as interest in the taxable year it is paid to the lender. This is true even if the prepayment of interest is an integral part of the loan agreement and the lender would not have extended credit without it. Wilkerson v. Commissioner,70 T.C. 240, 259-60 (1978), and the cases cited therein. By contrast, the borrower does not "pay" interest where the loan fee is withheld by the lender and only the net proceeds of the loan are delivered into the borrower's unrestricted control (i.e., the loan is "discounted"). The payment of the interest embodied in the fee *94 occurs only as principal payments are made over the life of the loan. Rubnitz v. Commissioner,67 T.C. 621, 628 (1977). It is perhaps true, as petitioner argues, that the two methods of structuring the loan transaction are identical in economic reality. Suffice it to say that the law in this area is well-settled, [2] and the facts in the instant case come clearly within the second situation discussed above. Petitioners never had unrestricted control of any loan proceeds until Transamerica remitted a check to them for the net proceeds after deducting the loan fee. In substance, the loan was discounted: petitioners issued a note for the full principal amount and received only the net proceeds. They did not receive the full principal into their unrestricted control and then pay the fee over to Union. The following language from Rubnitz best summarizes our holding: [A] cash basis borrower has not paid interest when the loan transaction is structured so that a loan fee is "withheld" *95 by the lender from * * * the principal amount of the loan and only the * * * principal amount minus the loan fee is actually made available for the borrowing taxpayer's use. * * * That in substance is what happened here. Branham received $1,592,220 from the bank but it promised to repay $1,650,000 plus interest at a specified rate. * * * [The] difference * * * might well have represented additional interest charges. However, it is plain that Branham did not pay that interest in 1970. Instead, by signing a promissory note, it specifically chose to postpone paying that amount until sometime in the future. The entire $57,780 was to be paid ratably by the borrower over the life of the loan as one component of the monthly installments * * * which would ultimately result in the payment of the full $1,650,000. * * * Petitioner suggests that the substance of what occurred * * * was no different from the bank's initially having deposited the full $1,650,000 in Branham's account and Branham's subsequently having withdrawn funds from this account to pay the loan fee. However, * * * the critical point which appears from the record * * * is that Branham never had unrestricted control *96 over any portion of the loan proceeds * * *. Its powers in respect of these funds were at all times subject to substantial limitations. Under such conditions, a prearranged retransfer of funds, immediately after they had been deposited in Branham's account, as the final step in an integrated transaction would not constitute the "payment" which gives rise to a deduction by a cash basis taxpayer. * * *. [67 T.C. at 628-29.] Petitioner argues that the escrow holder is the agent of both borrower and lender, and that its payment of a loan fee for the borrower pursuant to his instructions is constructive payment of the fee by him. There are two problems with such analysis as applied to this case. First, Union as escrow holder "paid" the fee to itself, if It paid it at all. It sent the proceeds to Transamerica and instructed that company to remit to it a check covering the fee. Clearly, the effect of the exchange was simply that Union retained the fee, never really parting with it. Secondly, and more importantly, petitioners never had unrestricted control of the proceeds while they were in the hands of Union.While Union was, as escrow holder, technically an "agent" *97 of petitioners, it is clear that they had no authority to restructure the loan transaction by compelling Union to pay over to them the gross loan proceeds and then retransferring to Union at their leisure a portion of such proceeds as a loan fee. First, the escrow instructions were embodied in a standard form entitled "Loan Escrow Instructions," the terms of which the petitioners very likely could not have successfully renegotiated, and second, such a restructuring would have significantly shifted the economic risks between the parties to the loan. Rather than simply withholding its fee from the loan proceeds, Union would have had to rely for it upon the good faith and financial solvency of petitioners; its only recourse upon their failure to pay would have been expensive litigation. We therefore conclude that the escrow relationship did not give petitioners "unrestricted control" over the gross loan proceeds. It follows that Rubnitz is controlling here and hence that the loan fee must be amortized over the 60-month life of the loan. The method respondent used in this case to compute the amortization for 1975 appears to be reasonable. Accordingly, Decision will be entered *98 for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. It is not entirely clear that the two methods are truly identical, since the risks are apportioned between debtor and creditor differently under each, as discussed below.↩